IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Action No:_____

LONE STAR TAREGETED ADVERTISING, LLC,
A Texas Corporation

Plaintiff,

v.

MILESTDS, INC.,
A Colorado Corporation

Defendant.

_____

**COMPLAINT FOR PATENT INFRINGEMENT
AND DEMAND FOR JURY TRIAL**
_____

Plaintiff Lone Star Targeted Advertising, LLC ("LSTA"), for its Complaint against Miles TDS, Inc. ("Defendant" or "TDS"), alleges as follows:

**PARTIES**

1.  Plaintiff Lone Star Targeted Advertising, LLC ("LSTA") is a limited liability company organized under the laws of the State of Texas with its principal place of business in Dallas, Texas.

2.  On information and belief, MilesTDS, Inc. is a company organized under the laws of Colorado. MilesTDS, Inc. is a registered corporation in the state of Colorado.

**JURISDICTION AND VENUE**

3.  This is an action for patent infringement in violation of the Patent Act of the United States, 35 U.S.C. §§ 1 *et seq.*

1

4. This Court has original and exclusive subject matter jurisdiction over the patent infringement claims for relief under 28 U.S.C. §§ 1331 and 1338(a).

5. This Court has personal jurisdiction over Defendant because Defendant, on information and belief, has transacted and is transacting business in the District of Colorado that includes, but is not limited to, the use of products and systems that practice the subject matter claimed in the patents involved in this action.

6. Venue is proper in this district under 28 U.S.C. 1400(b) because on information and belief, Defendant has committed acts of infringement within this District. In addition, the Defendant is a registered corporation in the State of Colorado.

**FACTS**

7. On October 9, 2001, U.S. Patent No. 6,301,619, entitled "System and Method for Providing Service of Sending Real Time Electronic Information to Selected Individual Viewers of Transmitted Video or Computerized Signals" was duly and legally issued. A true and correct copy of the '619 Patent is attached hereto as Exhibit A. The '619 Patent issued from application Serial Number 09/260,035 filed March 2, 1999. The inventors assigned all right, title and interest in the '619 Patent to Oplus Technologies Ltd. Oplus Technologies Ltd. assigned its entire right, title, and interest in '619 Patent to Lone Star Technological Innovations, LLC, who then assigned its entire right, title, and interest in the '619 Patent to LSTA. LSTA is the sole owner of all rights, title, and interest in and to the '619 Patent including the right to sue for and collect past, present, and future damages and to seek and obtain injunctive or any other relief for infringement of the '619 Patent.

8. On information and belief, TDS does business as Strategus and operates the website www.strategus.com ("the Strategus Website"). *See* Exhibit B (Trademark Registration of Strategus).

9. Claim 9 of the '619 Patent states:

> A method for a sender sending real time electronic information to a viewer of transmitted video signals, the method comprising the steps of:

2

(a) providing viewer attribute information related to the viewer;

(b) receiving and storing said viewer attribute information by an electronic device, included with an in communication with a television belonging to the view, said viewer attribute information input into said electronic device by the viewer;

(c) providing sender requested electronic information of the sender to be transmitted by request of the sender to the viewer, said sender requested electronic information of the sender is included with a non-viewer provided subset of said viewer attribute information related to the viewer;

(d) providing a service center for communicating to a television station provider of the transmitted video signals encoding instructions to form encoded sender requested electronic information of the sender;

(e) transmitting a compound video signal including said non-viewer provided subset of viewer attribute information and said encoded sender requested electronic information of the sender by said television station provider of the transmitted video signals to said electronic device included with and in communication with said television belonging to the viewer;

(f) making a decision selected from the group consisting of accepting said encoded sender requested electronic information of the sender and not accepting said encoded sender requested electronic information of the sender by said electronic device included with and in communication with said television belonging to the viewer, whereby said decision by said electronic device accepting said encoded sender requested electronic information the sender is made by recognizing said non-viewer provided subset of said viewer attribute information;

(g) decoding said encoded sender requested electronic information of the sender by said electronic device included with and in communication with said television belonging to the viewer to form decoded sender requested electronic information of the sender;

(h) formatting said decoded sender requested electronic information of the sender by said electronic device included with and in communication with said television belonging to the viewer to form formatted decoded sender requested electronic information of the sender;

(i) opening up of a subwindow within said television belonging to the viewer; and

(j) displaying said formatted decoder sender requested electronic information of the sender within said subwindow within said television belonging to the viewer.

On information and belief, TDS infringes Claim 9 of the '619 Patent, through doing business as Strategus. As stated on the Strategus Website: "Strategus was the first company to programmatically run OTT/CTV ad campaigns in early 2015. Since then, Strategus has

3

continued to innovate in the areas of OTT/CTV targeting, optimization, reporting, and analysis. Deep knowledge and experience in the OTT/CTV advertising space enables Strategus to serve enterprise clients and brand agencies coast to coast. Strategus' data-driven targeting plus advanced optimization techniques ensure marketers will achieve maximum reach and KPIs while maintaining the highest standard of brand-safety. As an omnichannel platform, the company provides a wide range of managed-services and programmatic marketing solutions, including OTT/CTV, display, paid search, paid social, and email."

*See* https://strategus.com/2019/08/for-two-consecutive-years-strategus-appears-on-the-inc-5000/.

      10.    TDS's system infringes each element of Claim 9 as follows:

           a.    "providing viewer attributable information related to the viewer" – TDS's platform provides viewer attributed information related to the viewer, it utilizes viewer attribute information via advanced audience analytics, in particular: "Strategus' content agnostic approach allows advertisers to dig deep and target their clients' specific demographics and consumer interests at the right time, in the right place and on their preferred device. Trying to reach foodies? We can serve ads to specific dietary segments such as gluten-free, vegetarian or keto to go beyond traditional segmentation by age, location, and gender. Traditional television advertising simply can't offer that level of personalization.  Our data-backed, personalized OTT audience targeting is derived from data management platform sources (DMPs) to fully customize your OTT outreach across every channel and device. We seamlessly align, distribute and integrate your ad campaign's digital assets and content strategy wherever your client's messaging pops up — automatically. There's no longer a need to produce content per outlet or format, thanks to OTT."  See https://strategus.com/ott-audience-targeting/.



b.     "receiving and storing said viewer attribute information by an electronic device included with an in communication with a television belonging to the viewer, said viewer attribute information input into said electronic device by the viewer" – In order for TDS to utilize its platform and analytical system, an electronic device of the viewer's is in communication with a TV in order to obtain "real-time" audience data and insights.  For most viewers, on information and belief, this will be a set top box that provides the real-time analytics information to the "sender."

 

**DEMOGRAPHIC TARGETING**

Demographic targeting allows Strategus to customize your creative to target virtually any demographic, such as gender, age, ethnicity, education level, income, and more. The effectiveness of demographic targeting can be accurately measured and helps reduce unnecessary spend.

 

**GEOGRAPHIC TARGETING**

Serves ads based on the user's location to create greater advertising accuracy, increasing ROI and minimizing wasted impressions. Geographic targeting lets us increase the local relevancy of your brand and the effectiveness of your ads.

"Our programmatically placed over-the-top (OTT) ads utilize relevant audience segments, detailed demographics, and interest categories, paired with data-driven real-time bidding to solve these problems."  *See* https://strategus.com/why-ott-advertising/

          c.   "providing sender requested electronic information of the sender to be transmitted by request of the sender to the viewer, said sender requested electronic information of the sender is included with a non-viewer provided subset of said viewer attribute information related to the viewer" --   On information and belief, targeted advertisement based on the campaign being run using TDS's platform meets this requirement, as the sender is requesting the sending of information from sender to viewer based on viewer attributable information.




      d. "providing a service center for communicating to a television station provider of the transmitted video signals encoding instructions to form encoded sender requested electronic information of the sender" --  TDS's platform is the service center that interfaces in providing information of advertiser, content provider, and the viewer.

7




## OPTIMIZE YOUR CREATIVE.
## OUTPERFORM YOUR COMPETITION.

Dynamic OTT puts a dynamic spin on customized programmatic advertising, targeting qualified viewers and households. Research tells us that the more customized and dynamic the creative, the better the performance and ROI. With Dynamic OTT from Stategus, the customer's intent is determined via their online behavior, and only matching in-stock vehicles are promoted. If a vehicle in your video ad sells, it is replaced with a similar, in-stock vehicle. And, if a vehicle in your video has a price change for any reason, the video ad is automatically updated to reflect it. Ads individually render daily reflecting changes, but VAST tags stay the same for your convenience.

Like every other Strategus campaign, Dynamic OTT includes dedicated access to a live client success manager and senior-level Ad Ops Campaign Manager. The widest variety and broadest access to the best audience targeting data is combined with unparalleled access to all OTT inventory. And it's wrapped up with the best reporting in the industry—to give your OTT campaign a true advantage.

     e. "transmitting a compound video signal including said non-viewer provided subset of viewer attribute information and said encoded sender requested electronic information of the sender by said television station provider of the transmitted video signals to said electronic device included with and in communication with said television belonging to the viewer." -- This element is met as TDS transmits and sends encoded information, e.g. video to viewers including non-viewer provided information in order to deliver ads targeted to the viewer,

8

especially in regard to the TDS platform's ability to: "…utilize device targeting optimizations to serve only into true OTT devices and connected TVs. Ads can be placed on these devices either through private marketplace placements (PMPs), direct deals (where publishers get a first look at the inventory) or via an open market. The more partnerships, the greater reach and scalability for advertisers." *See* https://strategus.com/ott-inventory-devices/

     f. "making a decision selected from the group consisting of accepting said encoded sender requested electronic information of the sender and not accepting said encoded sender requested electronic information of the sender by said electronic device included with and in communication with said television belonging to the viewer, whereby said decision by said electronic device accepting said encoded sender requested electronic information the sender is made by recognizing said non-viewer provided subset of said viewer attribute information" – On information and belief, inherently, the only logical next step for said device is to determine whether to accept (for purposes of viewing/displaying) said sender requested electronic information based on whether the transmitted subset of viewer attribute information matches viewer attribute information on the device.  The device determines whether a given transmission is intended for it by checking if the transmission is tagged with attributes matching its own local attributes.

 Per the standard process of OTT ad insertion: "Playback devices will read the top level manifest and learn the available profiles. **They will then decide on a profile, read its individual manifest and start reading decoding the segments**. If the network conditions change, the playback device may switch to a higher or lower profile as needed. On a live stream, manifests are frequently updated."  *See* https://www.tvtechnology.com/opinions/scte10435-and-beyond-a-look-at-ad-insertion-in-an-ott-world.

     g. "decoding said encoded sender requested electronic information of the sender by said electronic device included with and in communication with said television belonging to the viewer to form decoded sender requested electronic information of the sender" –

9

On information and belief, encoded information is decoded in order for the information to be displayed to the viewer.

    h. "formatting said decoded sender requested electronic information of the sender by said electronic device included with and in communication with said television belonging to the viewer to form formatted decoded sender requested electronic information of the sender" – On information and belief, decoded information is necessarily formatted in an appropriate manner consistent with the display requirements of the television with which it is in communication.

    i. "opening up of a subwindow within said television belonging to the viewer" – A television screen displays content.  Within the television, on information and belief, there are other windows, such as when choosing the menu which pops up. At least for example, when dynamic brand insertion is utilized.

    j. " and, displaying said formatted decoder sender requested electronic information of the sender within said subwindow within said television belonging to the viewer" -- On information and belief, after accepting, decoding, and formatting sender requested electronic information, the electronic device necessarily displays said sender requested electronic information.

## FIRST CLAIM FOR RELIEF
### Patent Infringement of the '619 Patent (35 U.S.C. §§ 101, et seq.)

11. LSTA refers to and incorporates herein by reference paragraphs 1-10.

12. Defendant infringed, either directly or indirectly, at least Claim 9 of the '619 Patent in this judicial district and the United States, through the services they provided as outlined at www.Strategus and as described above.

13. Defendant, therefore, by the acts complained of herein, made, used, sold, or offered for sale in the United States, including in the District of Coloardo, products and/or

services embodying the patented method, and have in the past infringed the '619 Patent, either literally or under the doctrine of equivalents, pursuant to 35 U.S.C. §271(a).

14. To the extent that some elements of claim 9 were performed by a different party than TDS, TDS participated in the infringement (as described above) and received a benefit upon performance of the steps of the patented method. For example, TDS provided the software and technology that established viewer attribute information related to the viewer that can be collected, and how that information was transmitted, received, stored and acted upon in accordance with the patented method. TDS received a benefit from such actions by the customer and television station provider as it allowed targeted advertising to be displayed through the top set box.

15. Upon information and belief, the acts described above concerning the use, offer for sale, sale, operation, distribution, and/or installation of TDS's' products and/or software and those described below also constitute acts of induced and contributory infringement. Customers and users used the infringing products and software to provide targeted ads.

16. To the extent that some elements of a claim were performed by a different party than TDS, TDS, through its software and infringing products, participated in the infringement (as described herein) and receives a benefit upon performance of steps of a patented method. For example, TDS provided the software and technology that established viewer attribute information related to the viewer that can be collected, and how that information was transmitted, received, stored and acted upon in accordance with the patented method. TDS received a benefit from such actions by the customer and television station provider as it allowed targeted advertising to be displayed.

17. Upon information and belief, TDS provided its customers and/or users of its products and software instructions to use, load and operate in an infringing manner or to create and use infringing products. Upon information and belief, TDS further induced its customers and/or users of TDS's platform to use its products (and accompanying software) by providing subscriptions to TDS's platform. Further, TDS had actively induced infringement by its

customers and/or users of TDS's products and software in this judicial district.  Upon information and belief, TDS knowingly and specifically designed TDS's platform in a manner that infringed the '619 Patent.  Upon information that belief, TDS also provides support services for claim 9 of the '619 Patent.  TDS's targeted advertising method has no substantial non-infringing use.  TDS has acted with specific intent to induce or cause infringement and to conduct acts of infringement as described herein within the jurisdiction and elsewhere. Upon information and belief, TDS continued to provide instructions since having notice and actual knowledge of the '619 Patent.

18. Upon information and belief, TDS's method has no substantial non-infringing uses and is especially made and/or adapted so as to infringe the '619 Patent.  TDS has acted with specific intent to induce or cause infringement and to conduct acts of infringement as described herein within this District and elsewhere.

19. Plaintiff has complied with the notice requirement of 35 U.S.C. § 287 and does not currently make, use, sell offer for sale products or services embodying the '619 Patent.

20. Plaintiff reserves the right to modify its infringement theories as discovery progresses in this case; it shall not be estopped for infringement contentions or claim construction purposes by the infringement allegations that it provides with this Complaint.  The element-by-element analysis herein is intended to satisfy the notice requirements of Rule 8(a)(2) of the Federal Rule of Civil Procedure and does not represent Plaintiff's preliminary or final infringement contentions or preliminary or final claim construction positions.

21. By reason of the acts of TDS alleged herein, LSTA has suffered damage in an amount to be proved at trial.

## JURY DEMAND

LSTA demands a jury trial on all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, LSTA prays for relief as follows:

A. Judgment that Defendant has directly infringed, and induced others to infringe, the '619 Patent either literally and/or under the doctrine of equivalents;

B. Judgment awarding LSTA general and/or specific damages, including a reasonable royalty and/or lost profits, in amounts to be fixed by the Court in accordance with proof, including enhanced and/or exemplary damages, as appropriate, as well as all of Defendant's profits or gains of any kind from their acts of patent infringement from six years prior to the filing of the complaint until March 2, 2019;

C. Judgment awarding LSTA all of its costs, including its attorneys' fees, incurred in prosecuting this action, including, without limitation, pursuant to 35 U.S.C. § 285 and other applicable law;

D. Judgment awarding LSTA pre-judgment and post-judgment interest; and

E. Judgment awarding LSTA such other and further relief as the Court may deem just and proper.

Dated: June 25, 2020        Respectfully submitted,

BANIE & ISHIMOTO LLP

By /s/ John A. Lee

John A. Lee
3705 Haven Ave., #137
Menlo Park, California 94025
Telephone: 650-241-2773
Email: ishimoto@banishlaw.com

Attorney for Lone Star Targeted Advertising, LLC